UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ECF CASE**

MARGARET DOLSON,

    Plaintiff,

vs.

VILLAGE OF WASHINGTONVILLE,
STEPHEN PASCAL, CHIEF OF POLICE,
sued in his individual capacity,

    Defendants.

------------------------------------------------------------x

**ECF CASE**

**COMPLAINT**

**05 CIV. 2204**

**JUDGE McMahon**

By and through her counsel, Michael H. Sussman, plaintiff hereby avers and alleges against defendants:

1. Plaintiff, Margaret Dolson, is a resident of the County of Orange, State of New York, within this judicial district.

2. Plaintiff is of legal age and African-American descent.

3. Defendant Village of Washingtonville is a municipal body organized pursuant to the laws of the State of New York. It is located within the County of Orange, is governed by a five member Board of Trustees, inclusive of a duly elected Mayor, and may sue and be sued.

4. Defendant Stephen Pascal currently serves as Chief of Police and was so appointed in the summer of 2001. He resides in the County of Orange, State of

New York within this judicial district. As complained of herein, the conduct defendant Pascal engaged in was committed under color of state law and was without the proper discharge of his duties.

5. As plaintiff alleges that defendants acted under color of state law and in a manner intended to deprive plaintiff of her constitutional and statutory rights, this Honorable Court has jurisdiction over this cause pursuant to 28 U.S.C. secs. 1331 and 1343(3) & (4) and 42 U.S.C. secs. 1983 and 1988.

6. Plaintiff grew up in Washingtonville, as did several generations of Dolsons before her.

7. In or about 1991, plaintiff was offered and she accepted a provisional appointment to the position of dispatcher.

8. At the time of her appointment and at all times thereafter, plaintiff was the only African-American employee of the police department.

9. In 1992, plaintiff passed the test for police dispatcher and her provisional status became permanent.

10. Plaintiff completed her probationary period without difficulty, revamping the entire filing system in the process.

11. By late 1992, Chief Kuzmiak named plaintiff senior dispatcher [a non-civil service title within the department] and asked her to supervise other

dispatchers.

12. Defendant Village has never used a system of written job evaluations.

13. Through the 1990's, plaintiff had a tense and difficult relationship with defendant Pascal.

14. Other employees reported to her that he made negative comments about her and she heard him make racially insensitive remarks to an Hispanic dispatcher.

15. In the mid-1990's, a bi-racial girl was raped by three white boys.

16. Thereafter, the police department used one of the boys in an ABC sting.

17. Plaintiff was furious with the department's handling of this incident, believing that the white boys should be prosecuted, not coddled.

18. One day, after she had a letter to the editor published in the village newspaper, she found the article defaced with the words "Just Say No" scribbled on it in the police station.

19. In July 2002, off-site and at a party for another police officer, Pascal noticed a black man sitting at a bar and started mocking the man by singing, "Sweet Low, Sweet Chariot."

20. Shortly thereafter, plaintiff directly asked then-Chief Pascal whether he did not like her because she was black; he did not respond.

21. Defendant Pascal has subjected plaintiff to disparate treatment as

compared with that given to a white dispatcher with whom he works and who he favors, Maria Fleming.

22. Some instances of this treatment follow:

(A) he sought to discipline plaintiff when she was out of work for several days with a family emergency, but allowed Fleming to take off for comparable reasons without discipline; when plaintiff called defendant Pascal on this in August 2002, he shredded his memo and said, "Let's just forget about it."

(B) in January 2003, defendant Pascal again served plaintiff with a counseling memorandum chiding her for being late during snow storms; yet, the favored white dispatcher, Fleming, repeatedly did not come to work at all during snow days with no consequence;

(C) since June 2003, plaintiff has not been allowed to train new dispatchers and Fleming has been given responsibility for that training;

(D) plaintiff has been denied opportunities for overtime which have been made available to Fleming and other Caucasian dispatchers with less seniority;

(E) plaintiff has been repeatedly counseled for being late to work, while Caucasians were permitted to come late without consequence until plaintiff complained about disparate treatment;

(F) plaintiff has also been chastised for staying late at the police station to

complete her blotter entries, while Fleming has done the same without consequence;

(G) In June 2004, after a two month absence following surgery, plaintiff sought to return to work; Pascal refused to allow her to return to work pending her being cleared by a doctor chosen by the Village Board. There was no written departmental policy or practice requiring this sort of clearance and Pascal himself had refused to see a doctor before returning from a prior injury.

23. Defendant Pascal's hostility toward plaintiff has been manifested in other ways as well, to wit, attempting to change her job title so he could alter her shift; charging her for being two minutes late; crowding her work space with file cabinets while she out sick on a work-related injury and placing a first-aid box in her work space making it likely that she would injure herself.

24. On or about January 31, 2005, defendant Pascal, acting on behalf of the defendant Village, told plaintiff [through her union representative] that if she did not resign voluntarily he would bring in the State Police and the DA, have her arrested for abusing the NYSPIN system and terminate her.

25. Plaintiff refused as she was aware that NYSPIN use is commonplace and she had a good faith basis for using the system.

26. On February 1, 2005, defendant Pascal locked up plaintiff's files and

directed supervisory officers not to have anything to do with her.

27. On February 3, 2005, defendant Pascal propounded charges, claiming that plaintiff had engaged in ten instances of misconduct relating to her effort to determine whether the mother of her grandchildren had a valid driver's license.

28. Plaintiff was suspended for thirty days due to these charges.

29. Using the NYSPIN for unofficial business is common in the police department.

30. Defendants have not enforced strict rules governing the use of NYSPIN and plaintiff is the first departmental employee ever brought up on charges of abusing NYSPIN.

31. In the meantime, six months after learning that a white police officer had sexual relations with a minor female, defendants still permitted that officer to wear the department's uniform and engage in road patrol.

32. Plaintiff has repeatedly brought her complaints of mistreatment to individual members of the Village Board or to the Board as a whole.

33. Members of the defendant Board are fully apprised that she is and has long been the only African-American employed by and in the police department since 1991.

34. Defendants have intentionally discriminated in the terms and conditions

of plaintiff's employment on account of her race.

35. By and through the actions set forth above, defendants have caused plaintiff to suffer substantial stress, anxiety, embarrassment and humiliation.

CAUSES OF ACTION

36. Plaintiff incorporates paras. 1-35 as if fully repeated herein.

37. By discriminating against her on the basis of race in the terms and conditions of employment, defendants discriminated against plaintiff in violation of 42 U.S.C. sec. 1981-A, the equal protection clause of the Fourteenth Amendment, as made actionable against them pursuant to 42 U.S.C. secs. 1983 and section 296 of the Executive Law of the State of New York.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

(a) accept jurisdiction in this matter;

(b) empanel a jury to hear and decide this matter;

(c) award to plaintiff compensatory damages against both defendants;

(d) award to plaintiff punitive damages against Pascal;

(e) award to plaintiff the reasonable attorneys fees and costs arising from the prosecution of this case;

(f) permanently enjoin defendants from engaging in acts of racial discrimination

against plaintiff and

(g) grant any other relief which the court deems to be in the interests of justice.

                        Respectfully,

                        Michael H. Sussman (3497)

Law Offices of Michael H. Sussman
PO Box 1005
Goshen, NY 10924
(845)-294-3991

COUNSEL FOR PLAINTIFF               FEBRUARY 14, 2005