UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARGARET DOLSON,                                      (ECF)
                                                     Docket No.:
                          Plaintiff,                 05 CIV 2204 (CM)

          -against-

VILLAGE OF WASHINGTONVILLE,
STEPHEN PASCAL, CHIEF OF POLICE
sued in his Individual Capacity,

                          Defendants.
-----------------------------------------------------------X

===================================================

DEFENDANTS STEPHEN PASCAL AND
VILLAGE OF WASHINGTONVILLE'S
MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS COMPLAINT

===================================================

BOEGGEMAN, GEORGE, HODGES & CORDE, P.C.
Attorneys for Defendants
11 Martine Avenue
White Plains, New York  10606
(914) 761-2252

# STATEMENT OF MATERIAL FACTS

**(See addendum)**

**Standard of review**

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Gant v. Wallingford Bd. Education, 69 F.3d 669, 673 (2d Cir. 1995) quoting, Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, the court is not required to accept as true plaintiff's conclusions of law or unwarranted deductions. Bishop, *Supra.* citing, First National Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)(quoting 2A Moore & Lucas, Moore's Federal Practice, P 12.08, at 2266-69 (2d ed.1984)(citation omitted) *cert denied*, 513 U.S. 1079(1995).

The court may consider, "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Deepwells Estates, Inc. v. Incorp. Village of Head of the Harbor, 973 F.Supp.338, 343 (E.D.N.Y. 1997) citing, Samules v. Air Transport Local, 992 F.2d 12, 15 (2d Cir. 1993). It is not the Court's function to weigh the evidence that might be presented at trial; the court must merely determine whether the complaint itself is legally sufficient. Id. at 343.

 "A complaint consisting of nothing more than naked assertions and setting forth no facts upon which a court could find a violation of Section 1981 fails to state a claim under Rule 12(b)(6)." Evans-Gadsen v. Bernstein, et al., 332 F.Supp.2d 592 (SDNY 2004) citing Timmons v. City of Hartford, 283 F.Sup.2d 712, 713 (D.Conn. 2003). Additionally, a complaint must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of

racially discriminatory intent." <u>Yusef v. Vassar College</u>, 35 F.3d 709, 713 (2d Cir. 1994). "In other words, a proper pleading under Section 1981 must set out facts that demonstrate that the plaintiff's race was the reason for the defendant's conduct." <u>Burgin v. Toys-R-Us-Nytex, Inc.</u>, No. 97 CV 988E, 1999 WL 454302 at * 2 (WDNY June 30, 1999).

Similarly, summary judgment should be granted if the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are deemed material only when they might affect the outcome of the case under the governing law. *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). Irrelevant or unnecessary factual disputes will not be considered. *See* <u>Anderson</u>, 477 U.S. at 248. Moreover, the mere existence of a scintilla of evidence in support of the nonmoving party's case or "metaphysical doubt as to the material facts" will not prohibit summary judgment. *See* <u>Id</u>. at 252; <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248; <u>First Nat'l Bank of AZ v. Cities Serv.Co.</u>, 391 U.S. 253, 288 –89 (1968).

<u>Rule 56</u> mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322; *accord* <u>Equimark Commerical Fin. Co. v. C.I.T. Servs. Corp.</u>, 812 F.2d 141, 144 (3d. Cir. 1987). The moving party possesses the initial burden to show the absence of a genuine issue of material fact. *See* <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970).

Where the non-movant has the burden of proof at trial, the moving party may discharge its initial burden by merely pointing to the "absence of evidence to support the nonmoving party's" claims or defenses. Celotex, 477 U.S. at 325. Once the burden shifts, the nonmoving party holding the burden of proof at trial may not rest upon the mere allegations or denials of his pleadings, but rather must "designate specific facts showing there is a genuine issue for trial." Id. at 324; Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995). If the evidence is "merely colorable" and "not significantly probative," the court may decide the legal issue and grant summary judgment. *See* Anderson, 477 U.S. at 249-50; First Nat'l Bank, 391 U.S. at 290. In sum, summary judgment is proper where no reasonable jury "could find by a preponderance of the evidence" for the nonmoving party. *See* Anderson, 477 U.S. at 248. General averments or conclusory allegations of an affidavit do not create specific factual disputes. *See* Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888-89 (1990).

## ARGUMENT

### POINT I

### THE PLAINTIFF CANNOT ESTABLISH A CAUSE OF ACTION UNDER 42 USC § 1981.

42 USC Section 1981 provides that,

> (a) all persons with in the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by the white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

> (b) For the purposes of this section, the term "make and enforce contracts" includes the making, performance,

> modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.
>
> (c) The rights protected by this section are protected by the impairment by nongovernmental discrimination and impairment under color of state law.

Racial discrimination that affects employment contracts falls within the purview of § 1981. <u>Rivers v. Roadway Express</u>, 511 U.S. 298, 304, 114 S.Ct. 1510, 128, L.Ed. 274 (1994), <u>Whidbee v. Garzarelli Food Specialties</u>, 223 F.3d 62, 72 (2d Cirl. 2000). It is undisputed that the plaintiff in the instant case is Civil Service employee with the Village of Washingtonville and her employment is subject to a collective bargaining agreement.

It is well settled that in order to establish a claim under 42 USC § 1981, a plaintiff must allege facts, which if proven to be true, would establish the following three elements: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of his or her race; and (3) that the defendant discriminated in connection with one of the statute's enumerated activities. <u>Evans-Gadsen v. Bernstein, et al.</u>, 332 F.Supp.2d 592 (SDNY 2004) citing <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 339 (2d Cir. 2000) cert. denied, 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16, 2001. Section 1981 only prohibits intentional racial discrimination. In other words the discrimination must be purposeful, and must be based upon the individual's race. <u>Evans-Gadsen</u>, 332 F.Supp.2d at 596, fn 3.

It is undisputed that the plaintiff in the case at bar is an African-American woman. Therefore, the first element is satisfied. In order to establish the second element, the plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially

discriminatory intent. Id. citing Yusuf v. Vassar College, 827 F.Supp. 952 (SDNY 1993), aff'd, 35 F.3d 709, 713 (2d Cir. 1994).

However, when deciding dispositive motions in employment situations under Section 1981, the courts apply the McDonnell Douglas burden shifting analysis utilized in Title VII cases. See generally, Patterson v. McLean Credit Union, 491 U.S. 164, 186 n.1 (1989), McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Texas Dep't of Cmty.Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Choudhury v. Polytechnic Inst. of New York, 735 F.2d 38, 44 (2d Cir. 1984)(the same elements constitute a claim for employment discrimination under § 1981 as under Title VII).

However, this court does not need to apply the burden shifting analysis to make its determination as to whether or not to dismiss the plaintiff's complaint. The defendants have moved to dismiss the plaintiff's complaint based upon the plaintiff's inability to set forth and establish a prima facie case of racial discrimination based solely upon the pleadings, the plaintiff's Article 75 hearing and her deposition testimony. This evidence, of which the court may take judicial notice of, fails set forth any facts demonstrating that the termination of the plaintiff's employment and is causally related to intentional racial discrimination on the part of the defendants.

The plaintiff has admitted to engaging in the very conduct that resulted in her employment being terminated. She does not dispute making numerous unauthorized searches on NYSPIN despite the warnings she received and the rules and regulations she read informing her that such searches are illegal. [p. 54 **Exhibit "B"**]. The Chief testified at the plaintiff's Article 75 hearing that he unwittingly discovered the searches and could not find an ongoing investigation that warranted the searches. He referred the matter to

Sgt. Reilly of the New York State Police and she conducted an investigation. The Chief of Police referred the plaintiff for disciplinary charges and an Article 75 hearing. [pp. 31-33, 86, 87, **Exhibit "G"**, **Exhibit "H"**].

   The plaintiff has failed to plead any facts demonstrating that the Chief's action of referring the plaintiff for disciplinary charges based on her illegal conduct was the result of intentional racial discrimination. The plaintiff's attempt to establish a nexus between her termination and the Chief's alleged conduct two years earlier singing, "Swing low, sweet chariot," in a bar where a black man was present is insufficient to create an inference of racial discrimination.

   The plaintiff testified at her deposition that she was not present and did not hear the Chief sing this song. Aside from the fact that the song was not directed at her, her allegation that it is true is based upon double hearsay. The plaintiff testified that Sgt. Frank Basile told Sgt. Bogart that this occurred in a bar offsite in July 2002. The plaintiff did not bring up the matter until several months later in October 2002 during her meeting with the Chief. Interestingly, while the plaintiff has sought to bring matters such as the location of the first aid box and the position of time clock to the Village Board's attention when she did not receive the response she liked from the Chief, she did not complain about the song and its alleged racial overtones to anyone following her meeting with Pascal. [pp. 163, 180 − 182, **Exhibit "B"**, 213 **Exhibit "C"**]. Furthermore, when she confronted the Chief with this allegation and asked why he didn't like her, he responded, "I don't have anything against you." [pp. 202, 203 **Exhibit "C"**].

   The plaintiff's unfounded allegation is double hearsay and is insufficient to create an issue of fact that she was terminated as a result of racial bias. The plaintiff has failed

to allege any other instances in the past four years that give rise to an inference of racial discrimination on the part of the Village of Washingtonville and the defendant Chief Stephen Pascal that may have resulted in the termination of her employment. The plaintiff testified that Chief Pascal has never said anything directly to her that was racial in nature. [pp. 213, 222 **Exhibit "C"**].

It should be noted that the plaintiff's employment was not terminated until after she filed her Complaint in this action. The plaintiff's employment was terminated following the Article 75 hearing, one month after she filed her complaint. Therefore, this intervening act, occurring several years after the alleged racial comment by the Chief renders the inference of causation impossible in this case. See, Tasadfoy v. Ruggiero, 365 F.Supp.2d 542 (SDNY 2005).

Likewise, the plaintiff's allegations fail to support her claim that the defendants' alleged racial discrimination adversely affected the terms and conditions of her employment under the collective bargaining agreement. As part of the plaintiff's prima facie case, she must demonstrate that she suffered an adverse employment action. An adverse employment action is "materially adverse in the terms and conditions of employment." Galabya v. NY City Bd. of Edu., 202 F.3d 636, 640 (2d Cir. 2000). A material adverse change must be "more than mere inconvenience or an alteration of job responsibilities." Id.

Examples of such a change include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indicies unique to a particular situation." An employment that is neutral is inadequate to establish a prima

facie case. Id., Richardson v. NYS Dep't of Corr.Serv., 180 F.3d 426, 446 (2d Cir. 1999). The change must create a significant material disadvantage.

Turning to the case at bar, the plaintiff alleges that her duties of training fellow dispatchers on NYSPIN and occasionally logging checks into a record book for copies of police accident reports were eliminated. The Chief of Police clearly testified that he simply "restructured" the manner in which the department handled NYSPIN and transferred the responsibility to the plaintiff's direct supervisor. This is the reason the plaintiff was not required to attend additional NYSPIN training. [pp. 18, 96 **Exhibit "G"**]. Irrespective, the changes to the plaintiff's employment responsibilities did not place her at a professional disadvantage or impact her ability to receive pay raises in accordance with her collective bargaining agreement. She was had been promoted to the highest position possible and always received pay raises in accordance with her agreement.

It is well established that there is no adverse employment action where the changes in working conditions did not affect the plaintiff's pay, benefits or other terms of her employment. Weeks 273 F.3d at 85. Changes and duties or working conditions that cause no material disadvantage, such as plaintiff's reassignment will not establish the adverse conduct required to make a prima facie case. McDonnell Douglas, 37 F.3d 379, 383 (8th Cir. 1994). The plaintiff's subjective dissatisfaction with her assignments is insufficient to create a prima facie case. Brown v. Snow, 2003 WL 1907974 at *4 (SDNY 2003). Therefore, irrespective of what the reasons were for the changes in responsibility, they do not constitute adverse employment actions and the plaintiff cannot establish a prima facie case of racial discrimination under 42 USC § 1981.

**Individual liability**

In order to state a claim for individual liability under § 1981, a plaintiff must not only allege specific instances of racial discrimination, but those allegations "must demonstrate some affirmative link to causally connect the actor with the discriminatory action." Edvans-Gadsen 332 F.Supp.2d at 596; Allen v. Denver Pub.Sch.Bd., 928 F.2d 978, 983 (10th Cir. 1991). According to the court in Edvans-Gadsen, there must be evidence demonstrating that the individual defendants are supervisors and were personally involved in the discriminatory activity. Id.

Contrary to the plaintiff's contention, the defendant Chief of Police did not personally participate in the adverse employment action taken against the defendant as a result of her illegal use of the NYSPIN system. According to the Chief's testimony at the plaintiff's Article 75 hearing, the investigation of plaintiff was conducted by the New York State Police, and not by the defendant, Chief Pascal. Chief Pascal simply referred the plaintiff for disciplinary charges. The decision to terminate the plaintiff's employment was made by the Village Board following the plaintiff's hearing. [pp. 31 – 33, 86, 87 **Exhibit "B"**, **Exhibit "H"**]. The plaintiff has failed to allege facts demonstrating that the Chief of Police was personally involved in the termination of her employment. As discussed above, the plaintiff's remaining allegations do not constitute adverse employment actions. Therefore, the plaintiff's causes of action the defendant Pascal must be dismissed for failure to state a claim.

**POINT II**

**THE PLAINTIFF'S COMPLAINT FAILS
TO STATE A DISPARATE TREATMENT
CLAIM.**

In order for a plaintiff to establish a prima facie case of disparate treatment based on race, she must show (1) that she was treated differently, (2) from a person of another race, color, gender, religion or national origin, (3) where the defendant intended to discriminate, and (4) where the defendant's intent to discriminate caused the difference in plaintiff's treatment. Anderson v. Anheuser-Busch, Inc., 65 F.Supp.2d 218, 228 (SDNY 1999)(quoting Taylor v. Runyon, No. 97 Civ. 2425 (RWS), 1997 WL 727488 at *5 (SDNY Nov. 20, 1997). A disparate treatment claim is one in which the employer "simply treats some people less favorable than others because of their race, color or religion," or other protected characteristic. Teamsters v. United States, 431 U.S. 324, 335, n.15, 52 L.Ed.2d 396, 97 S.Ct. 1843 (1977).  *See also* Hazen Paper Co. v. Biggins, 507 U.S. 604, 609, 123 L.Ed.2d 338, 113 S.Ct. 1701 (1993). Liability in a disparate-treatment case "depends on whether the protected trait…actually motivated the employer's decision." Id. at 610, 123 L.Ed.2d 338, 113 S.Ct. 1701.

There are no facts outlined in the plaintiff's complaint demonstrating that the defendants intentionally discriminated against the plaintiff because she is an African American female and that the alleged discrimination caused the difference in treatment between the plaintiff and her fellow dispatcher, Ms. Maria Fleming. The defendants do not contest that Ms. Fleming is a full time dispatcher similarly situated to that of the plaintiff. The plaintiff's allegations include incidents in which the plaintiff was allegedly

"disciplined" and Ms. Fleming was not. Her disparate treatment claim is based upon these alleged adverse actions.

A negative performance evaluation, on its own does not constitute a materially adverse action by an employer. Weeks v. NYS Div. Of Parole, 273 F.3d 76, 86 (2d Cir. 2001)(holding that a "notice of discipline" and a "counseling memo" by themselves were insufficient, as a matter of law, to constitute adverse employment action." See also,

> Sanders v. NY City Human Resources Admin., 361 F.3d 749 (2d Cir. 2004)(Disciplinary notices, "threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation); Lumhoo v. The Home Depot USA, Inc., 229 F.Supp.2d 121, 149 (EDNY 2002) citing, Honey v. County of Rockland, 200 F.Supp.2d 311, 320 (SDNY 2002); Weeks v. New York, 273 F.3d 76, 86 (2d Cir. 1991)(finding notice of discipline for misconduct did not constitute adverse employment action for purposes of employee's Title VII claim of disparate treatment where employee alleged no facts which could support and inference that the notice created a materially adverse change in her working conditions); Shabat v. Blue Cross Blue Shield, 925 F.Supp. 977, 989 (WDNY 1996)(finding no adverse employment action where the alleged discipline consisted of being "written up" and employee never "demoted or denied pay or other benefits as a result of these reports"), aff'd 108 F.3d 1370 (2d Cir. 1997).

The notice must be followed by an adverse consequence. The mere filing of a notice or warning in the plaintiff's employment file without any other materially adverse consequence fails to constitute actionable harm. Lumhoo v. The Home Depot USA, Inc., 229 F.Supp.2d 121, 149 (EDNY 2002) citing (SDNY Stembridge v. City of New York, 88 F.Supp.2d 276, 283 (SDNY 200)(finding no actionable harm where "reprimand contained a warning that repetition of improper behavior could result in disciplinary action but contained no planned discipline or further actionl."); Slinkosky v. Buffalo

Sewer Auth., 2000 WL 914118 at *8 (WDNY June 29, 2000)(finding no actionable harm by employer's failure to remove reprimand letter from employee's file because the plaintiff did not show that the letter affected her salary or other terms, privileges or conditions of her employment). Since the plaintiff was never reprimanded or disciplined prior to the NYSPIN incident and was always given timely raises, the fact that she was given counseling memoranda and Ms. Fleming was not is insufficient to establish a claim of disparate treatment. [pp. 250, 251 **Exhibit "C"**].

Furthermore, the plaintiff has failed to show that her denial of one or two opportunities to work overtime and to attend one NYSPIN training course hindered her opportunities for professional growth and career advancement or directly on the plaintiff's compensation. Despite the fact that the plaintiff is in possession of Ms. Fleming's time cards, she has failed to allege the amount of overtime Ms. Fleming and any other white dispatcher has received in comparison to that of the plaintiff.

The plaintiff testified that she believes that she missed only a "few opportunities to work overtime" in the past three years. [pp. 226, 227 **Exhibit "C"**]. She does not know if Ms. Fleming received overtime pay for the day she worked in October of 2002 has not observed Ms. Fleming working overtime on any other occasion during the day. [pp. 206, 207 **Exhibit "C"**,  pp. 19, 20, 163 **Exhibit "B"**]. She testified that she does not know of any job benefits Ms. Fleming has been given since Pascal was made Chief of Police as a result of their alleged relationship. [pp. 246, 247 **Exhibit "C"**]. Hence, the plaintiff's own testimony contradicts her claims.

Irrespective, the plaintiff clearly testified that she believes that her relationship with Chief Pascal became "tense" in 1992 and 1993 when she confronted him in a

meeting about rumors that he was having an affair with a female dispatcher, Ms. Fleming. [pp. 96, 97 **Exhibit "B"**]. The plaintiff had a meeting with Chief Pascal in October 2002 about being treated differently from Ms. Fleming. The plaintiff informed the Chief Pascal that his personal relationship with Ms. Fleming is interfering with her job. [pp. 224, 225 **Exhibit "C"**]. The plaintiff's allegations against the Chief about being treated differently arose from her dislike of the Chief's alleged personal affair with Ms. Fleming and were not as a result of the plaintiff's race.

The plaintiff also alleges that she was required to take a physical exam at the request of the Chief and the Village Board along with another police officer who had suffered injuries and was expected to return to work. However, the plaintiff was not the only employee asked to undergo a physical exam before returning to work after being out on disability.  It is the policy of the police department to conduct such an examination after an employee has been injured in the course of her employment. Chief Pascal was one of the first individuals subject to this policy. [pp. 209, 210  **Exhibit "C"**].

Finally, the plaintiff complained to the Village Board that a police officer was being investigated by the District Attorney's office for having sex with an underage person was still employed while her employment was suspended. However, the District Attorney in that instance had asked the police department to wait until the DA had had the opportunity to fully investigate the matter before the Village took action. In contrast with the plaintiff, the District Attorney did not conduct an investigation and had informed the Chief of police, that he had no intention to prosecute the plaintiff and disciplinary proceedings could commence.  [p. 86 **Exhibit "B"**].

The plaintiff dispatcher's employment was not similarly situated to that of the police officer, and the District Attorney's involvement warranted a different course of action. Hence, the plaintiff's allegation of disparate treatment with respect to the individual police officer is without merit.

The plaintiff's allegations fail to set forth sufficient facts to demonstrate that the defendants intended to discriminate against the plaintiff based upon race and that the alleged discrimination caused the difference in treatment. In fact, the plaintiff clearly testified that she was treated differently from Ms. Fleming because of the Chief's alleged personal affair with her. Evidence that the plaintiff's supervisors may have been hostile to her does not establish that the hostility arose out of any animus towards plaintiff based on her religion, national origin or age. "Title VII and the ADEA are no civility codes." Henkin v. Forest Labs, Inc., 2003 WL 749236 at *8 (SDNY Mar. 5, 2003).

Irrespective, the foregoing demonstrates that the plaintiff was not subject to adverse employment action in comparison to that of a similarly situated white co-worker necessary to establish a disparate treatment claim. There is no evidence that race played a part in any of the decisions may be her supervisors. As such, if the plaintiff was treated differently at all, the differences were minimal and do not rise of the level of a violation of the equal protection clause and a disparate treatment claim under § 1981.

**New York Executive Law § 296**

The standard of liability is essentially the same under New York Executive Law § 296. Since the plaintiff has failed to state a claim upon which relief may be granted under 42 USC § 1981 and the equal protection clause of the Fourteenth Amendment, her claims under the Executive Law should be dismissed as well.

## POINT III

## THE DEFENDANT PASCAL IS ENTITLED TO ABSOLUTE IMMUNITY.

It is a fundamental legal principle that absolute immunity is conferred upon government officials entrusted with significant "administrative or executive policy making responsibilities." Stukuls v. State of New York, 42 N.Y.2d 272, 278, 397 N.Y.S.2d 740 (1977). Such liability is afforded to protect principle executives from fear of suit regarding communications relating to their official duties and from lawsuits stemming from reports they file and statements made in support thereof, made in their official capacity. *See,* Algarin v. Town of Wallkill, 313 F.supp.2d 257, 258 (S.D.N.Y. 2004).

In light of the above, it is axiomatic that defendant Pascal, as the Chief of Police for the Town of Wallkill, must be entitled to the same protection for issuance of a counseling memorandum warning plaintiff of possible disciplinary proceedings, and for eventually terminating her position within the department for the unauthorized, and illegal use of NYSPIN. Such protection is mandated where these actions were undertaken in his official capacity as Police Chief.

Respectfully, the facts of the case the case at bar are analogous to those presented to this very Court in Algarin v. Town of Wallkill, *supra.* Therein, the plaintiff filed a lawsuit against the town and the Police Commissioner alleging violations of their civil rights in issuing a negative report for the police department in which they were employed. Id. However, this Court held that the Police Commissioner, in having executive authority delegated to him by the Town, thus were entrusted to administrative policy-making responsibilities, and were therefore entitled to absolute immunity. Id., at

260. In making this determination, the Court held that as a matter of New York law, the Police Commissioners were responsible for running the police department, and are therefore deemed executive officials, entrusted with the management and oversight of the department, and as such, enjoy the protections of absolute privilege in carrying out their duties without fear of suit.  Id., at 261.

Consequently, based on the above, given that Police Chief Pascal is the executive official within the Police Department for the Town of Wallkill, he is similarly entitled to the protection of absolute immunity. This conclusion is further supported by the fact that Police Chief Pascal had little or no discretion in the decision to terminate plaintiff. As evidenced by the record had herein, after noticing documents relating to a NYPSIN search, Chief Pascal asked around to determine if in fact a criminal investigation the individual named therein was ongoing. (**Exhibit "G"**, p 86-87) After learning that one was not, he then contacted Sgt. Reilly of the New York State Police. It was Sgt. Reilly who then investigated the unauthorized use of NYSPIN. (**Exhibit "G"**, p 31-33, 87). As a result of the investigation conducted by the New York State Police, Chief Pascal issued a memorandum to plaintiff advising her of possible disciplinary action. (**Exhibit "B"**, 32).

Again, given that the investigation of plaintiff was commenced and conducted by the New York State Police, and not by the defendant, Chief Pascal was acting in merely an administrative capacity when he referred the plaintiff for disciplinary charges. This was pursuant to his position as the executive office of the Town of Wallkill Police Department, and thus is entitled to absolute immunity.

**Qualified Immunity**

In the alternative, should this Court find that defendant Pascal is not entitled to absolute immunity, it is respectfully submitted that he is thus entitled to qualified immunity. To this end, it is well established that only after determining, "whether the plaintiff has alleged the deprivation of an actual constitutional right at all should the district court proceed to determine whether that right was clearly established at the time of the alleged violation." Sound Aircraft Services v. Town of East Hampton, 192 F.3d 329 (2d Cir. 1999) citing Wilson v. Layne, 526 U.S. 603, 614, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Turning to the case at bar, the discussion above demonstrates that the plaintiff has failed to state a claim for a violation of a federally protected constitutional right.  As such, this court does not need to reach a decision with respect to the issue of qualified immunity.

Nevertheless, should this court determine that the plaintiff has made such a showing, the defendant Pascal is entitled to summary judgment on the issue of qualified immunity. It is well established that a defendant is entitled to qualified immunity from liability for his discretionary actions if (1) his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), or (2) it was " 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." Lennon v. Miller, 66 F.3c 416, 420 (2d Cir. 1995)(citing Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Finnegan v. Fountain, 915 F.2d 817 (2d Cir. 1990) citing Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir. 1990); Calamia v. City of New York, 879 F.2d 1025, 1035 (2d Cir. 1989). A determination as to whether a defendant's conduct was objectively reasonable,

"is measured by reference to clearly established law and the information that the defendants possessed." <u>Anderson v. Creighton</u>, 483, U.S. 635, 641, 107 S.Ct. 3034, 3040 (1987); <u>Robinson v. Via</u>, 821 F.2d 913, 921, (2d Cir. 1987).

Respectfully, in the case at bar, defendant Pascal's conduct was objectively reasonable and he did not violate the plaintiffs' federally protected constitutional rights when he terminated plaintiff for her unauthorized and illegal use of NYSPIN. As such, he is entitled to judgment as a matter of law on the issue of qualified immunity. With regards to the first prong of the qualified immunity test, it is clear that the conduct of Police Chief Pascal, in initiating the proceedings that led to plaintiff's termination for the illegal, and unauthorized use of NYSPIN did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See,* <u>Harlow</u>, *supra*. This is especially so given that the penalties for the unauthorized use of NYSPIN are set by New York State Police Department, and where, as here, the investigation into plaintiff's use of the same was conducted by the New York State Police. Further supporting this conclusion is the fact is further supported by the fact that plaintiff herself did not deny that she had illegally used NYSPIN to conduct personal searches. (**Exhibit "B"**, p 54).

Moreover, the fact that plaintiff admits to using the system also serves to establish that it was "objectively reasonable" for Police Chief Pascal to believe that his actions were lawful, thus satisfying the second prong of the qualified immunity test. *See,* <u>Lennon</u>, *supra*.

Based on the foregoing, it is therefore readily apparent that in issuing plaintiff a memorandum warning of possible disciplinary proceedings, and for eventually

terminating plaintiff's employ with the police department, given that Chief Pascal was performing a discretionary act that was within his province, as the chief executive officer of the Town's police department, he is therefore immune from prosecution of the basis of qualified immunity.

## POINT IV

## THE PLAINTIFF CANNOT ESTABLISH
## A CAUSE OF ACTION AGAINST THE
## VILLAGE OF WASHINGTONVILLE.

In order to hold a municipality liable under § 1983 for the unconstitutional acts of its employees, the plaintiff must plead and prove that the violation of constitutional rights resulted from a municipal custom or policy. *See, e.g.,* Pembaur v. City of Cincinnati, 475 U.S. 469, 478-83, 106 S.Ct. 1292, 1297-300, 89 L.Ed.2d 452 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433 (1985); Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir. 1986); Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985), cert denied, 480 U.S. 916, 107 S.Ct. 1369 (1987); Dwares v. City of NY, 985 F.2d 94, 100 (2d Cir. 1993).  Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, Monell prohibits a finding of liability against the municipality. Monell v. Dept. of Soc. Servs., 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58.

The plaintiff in the instant case has failed to plead an official policy or custom that caused the plaintiff's injury. As the court outlined in McAllister v. New York City Police Dept., 49 F.Supp.2d 688 (S.D.N.Y. 1999),

> "Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support such an allegation. *See, e.g.,* Young v. County of Fulton, 160 F.3d 899, 903-04 (2d Cir. 1998) (affirming dismissal of plaintiff's *Monell* claim because "her allegations failed to establish that she suffered any deprivation of her rights by reason of an official policy, custom, or practice" of the municipal defendants); Oparaji v. City of NY, 152 F.3d 920 (table), No. 97-7517, 1998 WL 432988 at *1 (2dCir. April 21, 1998); Dwares v. City of New York, 985 F.2d at 100. ("The mere assertion ... that a municipality has ... a custom or policy [that violates plaintiff's constitutional rights] is insufficient in the absences of

allegations of fact tending to support, at least circumstantially, such an inference....."); <u>Smith v. Montefiore Med. Ctr.</u>, 22 F.Supp.2d at 283 (summary judgment for defendants on <u>Monell</u> claim because "bare allegations of ... a policy or custom, without any supporting evidence, do not constitute ... proof"); <u>Brodeur v. City of NY</u>, 1998 WL 557599 at *9; <u>Gonzalez v. City of New York</u>, 1998 WL 382055 at *3. ("There are no allegations of any municipal policy or custom that the Warden was executing, or that such a policy or custom caused the alleged violation of the plaintiff's constitutional rights, as required by <u>Monell</u>. The absence of any such allegation precludes a finding of liability against the Warden in his official capacity."); <u>Woo v. City of NY</u>, 1996 WL 457337 at *5. ("Conclusory allegations by a plaintiff of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a <u>Monell</u> claim, absent the production of evidence to back up such an allegation."); <u>Bruno v. City of NY</u>, 89 Civ. 6661, 1992 WL 84471 at *2 (S.D.N.Y. April 15, 1992) (plaintiff's conclusory allegation that "constitutional violations were 'pursuant to a custom, policy or practice of the City of New York Police Department' " is insufficient to state a <u>Monell</u> claim). *See also, e.g.,* <u>Covington v. City of New York</u>, 1998 WL 226183 *4. (granting defendants summary judgment on <u>Monell</u> claims because "plaintiff does not offer any evidence in support of his claim that [alleged unconstitutional police department] policies exist or that there is a causal connection between these alleged policies and the alleged deprivation of his constitutional rights"). <u>McAllister</u>, 49 F.Supp.2d at 688.

Turning to the case at bar, the plaintiff's failure to properly plead and demonstrate the existence of such policy or custom and demonstrate a causal relationship to her alleged injuries warrants dismissal of her claim. Moreover, the plaintiff cannot demonstrate that the defendants violated a federally protected constitutional right. In order for the plaintiff to establish a <u>Monell</u> claim, she must demonstrate an underlying constitutional deprivation. <u>City of Canton</u>, 489 U.S. at 387, 109 S.Ct. 1197. In <u>Monell</u>, the Supreme Court held that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." <u>Monell</u>, 436 U.S. at 691, 98 S.Ct. 2018. As discussed in Point I, the plaintiff in the instant case cannot establish that the defendant Pascal violated a federally protected constitutional right. Absent such evidence, the

plaintiff's Monell claim must be dismissed as a matter of law. See also, <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); <u>Pitchell v. Callan</u>, 13 F.3d 545, 549 (2d Cir. 1994).

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that this Court grant the defendants' for order dismissing the plaintiff's claims against the defendants on the basis that the plaintiff has failed to plead a <u>prima</u> <u>facie</u> case and a cause of action upon which relief may be granted pursuant to Fed.R.Civ.P., Rule12(b)(6) and for an order granting the defendant summary judgment pursuant to Fed.R.Civ.P., Rule 56(c) on the issues of qualified and absolute immunity, together with such other and further relief as the Court may deem just and appropriate under the circumstances herein.

Dated: White Plains, New York
      May 27, 2005

Yours etc.,

_____S/_____
BY: CYNTHIA DOLAN, ESQ.
BOEGGEMAN, GEORGE, HODGES
& CORDE, P.C.
Attorneys for Defendants
VILLAGE OF WASHINGTONVILLE
11 Martine Avenue
White Plains, New York 10606
(914) 761-2252